UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONNIE BROWNSTEIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:13-cv-0493-GWC |
| ) | |
| ADAM J. SHELTON, EQUITY ) | |
| RECOVERY SERVICE, LLC, and NEW ) | |
| ENGLAND ADJUSTMENT SERVICES ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**
**(Docs. 26, 35, 44, 68, 96, 108, 114, 116, 118)**

This is an action by a judgment debtor against a debt buyer, its debt collection company, and its attorney raising claims of violations of state and federal consumer protection laws and claims of unjust enrichment and conversion under state law. The court has subject matter jurisdiction through Plaintiff's claim under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

**Facts**

The basic facts of the case are not in dispute. All facts appear in court filings, docket statements, demand letters from collection counsel, and account records. The authenticity of some records is disputed, but this does not impact resolution of the pending motions.

In May 1996 Plaintiff Ronnie Brownstein entered into a VISA revolving credit agreement with Capital One Bank for a credit card with a $200 limit. (Doc. 68-4 at 8.) She soon maxed out the credit card. (Doc. 68-6 at 9.) By June 1997 she was behind in payments with 19% interest and $40 in past-due and overlimit fees accruing monthly. Capital One Bank sent her a final statement in December 1997, showing a balance of $504.12. (Doc. 68-6 at 14.)

1

Three years later, in June 2000, Capital One sold Plaintiff's account as part of a block of delinquent accounts to Collins Financial Services, Inc. ("Collins"). (Doc. 68-6 at 48.) In November 2000, Collins assigned Plaintiff's account to Equity Recovery Service, LLC ("Equity"). (*Id.* at 50.) Documents listed the balance due at the time of both sales as $544.12. (Plaintiff disputes the admissibility of these documents. (Doc. 76-1 at 2–3.))

Adam Shelton, Equity's attorney, filed a collections action in Connecticut small claims court in July 2002. (Doc. 68-6 at 2.) Plaintiff filed an answer with the court in which she stated that she expected the credit protection clause in her VISA agreement to have covered her missed payments during a period of unemployment which resulted in the arrears.

The statement of account filed by Shelton with the small claims court sought damages in the amount of the jurisdictional limit of $3,500. (Doc. 68-6 at 4–5.) To the original principal balance of $504.12, Defendants added interest ($726.92), past-due fees ($1,080), and overlimit fees ($1,080) that had accrued from December 1997 to June 2002, along with attorney's fees ($508.66). Defendants waived any claim in excess of $3,500. (Doc. 68-3 at ¶ 9.)

The small claims court issued a default judgment on September 18, 2002 in the amount of $3,535 (including the filing fee of $35.00). The judgment includes an order for weekly payments of $35.00 commencing October 3, 2002. (Doc. 68-6 at 54.)

The history of payments by Plaintiff appears in a statement maintained by Shelton's office. (Doc. 68-6 at 57–58.) It shows the original judgment amount of $3,500, plus the filing fee, for an opening balance of $3,535. In November 2003, Shelton added service costs ($80.01), which brought the balance to $3,946.41.

Commencing in December 2003, Plaintiff made monthly payments to Shelton. These started at $50.00, increased over time to $200, and included three payments of $250. By October 2012, Plaintiff had paid a total of $5,350 which Shelton attributed to costs ($150.01), principal ($3,145.97), and interest ($2,054.02).

On April 3, 2013, Shelton sent Plaintiff a collection letter stating: "YOU HAVE VIOLATED A COURT ORDER TO MAKE PAYMENTS." (Doc. 68-6 at 60.) The letter stated that Plaintiff owed a balance of $366.97, "including the remaining judgment principal, court

2

costs, and interest that is accruing thereon at 8% per year in accordance with Connecticut General Statute § 37-1." (*Id.*)

Plaintiff filed suit on April 10, 2013.

## I.  Defendants' Motion to Dismiss (Docs. 26, 35)

Shelton has filed a motion to dismiss the state-law claim that he violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq*. He contends that as it applies to attorneys, CUTPA claims are limited to billing disputes and other disputes arising from the business end of a law practice. In contrast to the FDCPA, CUTPA does not apply to statements made to adversaries such as Plaintiff. Plaintiff responds that CUTPA is not so limited.

The court has no need to resolve this issue because Plaintiff's Motion for Permission to Amend the Complaint includes the deletion of the CUTPA claim against Shelton. (Doc. 108 at 1 ("The proposed amendment would delete the Connecticut Unfair Trade Practices Act (CUTPA) claim as to defendant Shelton, so as to moot his motion to dismiss . . . and the CUTPA-related part of his motion for summary judgment.").)

Equity also has filed a motion to dismiss, arguing that the complaint does not sufficiently allege that it is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). But any defect in the present complaint (Doc. 62) is cured by Plaintiff's proposed amendments in her Motion for Permission to Amend. Plaintiff would specify that her account was in default when Equity bought it. (Doc. 108 at 1.) Where a party seeks to collect on a debt that it obtained when the debt was in default, it is considered a "debt collector" for purposes of the FDCPA. *Bridge v. Ocwen Fed'l Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012); *Ruth v. Triumph P'ships*, 577 F.3d 790, 796–97 (7th Cir. 2009).

The court denies Shelton's motion to dismiss as moot in light of Plaintiff's abandonment of her CUTPA claim against Shelton. It also denies as moot Equity's motion to dismiss in light of Plaintiff's proposed amendment specifying that Equity obtained her account when it was already in default.

3

## II.     Cross-Motions for Summary Judgment (Docs. 44, 68)

The main issue raised by the summary judgment motions is whether Defendants' assessment of postjudgment interest at 8% violated Connecticut law. At issue is the application and interpretation of two different Connecticut statutes relating to the accrual of interest: Conn. Gen. Stat. § 37-1 and Conn. Gen. Stat. § 37-3a(a).

Section 37-1 provides:

(a) The compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year; and, in computing interest, three hundred sixty days may be considered to be a year.

(b) Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt.

Section 37-3a(a) provides:

Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable.

In *Sikorsky Financial Credit Union, Inc. v. Butts*, 108 A.3d 228, 232 (Conn. 2015), the Connecticut Supreme Court explained the "markedly different purposes" of the two statutes. Section 37-1 provides for the general accrual of interest as compensation for loans of money or property. As the court explained, § 37-1(a) "sets a default rule that a loan of money or property shall be compensated with interest ... at a rate of 8 percent." *Sikorsky*, A.3d at 232. But the parties "may agree to a different interest rate ... or may waive or disclaim any interest on the loan." *Id.* Section 37-1(b) specifies that interest continues to accrue after maturity of the debt (when the debt becomes due) so long as the balance remains unpaid. This accrual is unaffected by entry of judgment on the loan. *Id.* at 233. But one's right to postmaturity interest can also be disclaimed. *Id.*

In comparison, § 37-3a(a) provides for the award of interest as *damages* "when the duty to pay arises from an obligation other than a loan of money or property, or when the parties to the loan have decided against interest on the loan." *Sikorsky*, 108 A.3d at 233. An award of

4

interest under this statute is "principally an equitable question lying within the trial court's discretion" and can "include either or both prejudgment or postjudgment interest." *Id.* at 234.

In *Sikorsky*, the court considered whether § 37-1 or § 37-3a governed whether postjudgment interest should accrue on a judgment for the unpaid deficiency on a car loan. *Id.* at 230. The court concluded that because the parties to the loan had not disclaimed it, postmaturity interest on the unpaid deficiency (both before and after entry of judgment) was required as of right under § 37-1. *Id.* at 234–35. And since the parties did not agree to a specific postmaturity interest rate, the 8 percent rate in § 37-1(a) applied. *Id.* at 235.

Plaintiff initially argued, in briefing before *Sikorsky* had been decided, that postjudgment interest was governed solely by § 37-3a and required the exercise of a trial court's discretion before it could be awarded. (Doc. 45 at 4–6.) But this argument fails in light of *Sikorsky*. And Plaintiff's effort to read into *Sikorsky* a requirement that a judgment debtor return to court for an order permitting postjudgment interest is incorrect. (Doc. 99.) The final judgment at issue in *Sikorsky* was remanded because it included an award of postjudgment interest at 2% which had been entered in error. 108 A.2d at 231, 235, 238. Remand was the only way to repair the trial court's mistake. That case-specific ruling does not imply that *every* judgment must return to court for amendment permitting the accrual of postjudgment interest. If that were the case, trial courts would be involved in an endless round of updating and amending countless final judgments. *Sikorsky* imposes no requirement.

Shelton argues that the extension of credit under the credit card agreement constituted a loan of money under § 37-1,[1] and that under that statute, Defendants were entitled to postjudgment interest as a matter of course. (Doc. 68-1 at 10–14.) Plaintiff responds that an open credit agreement, like a credit card, cannot be considered a loan of money under § 37-1. (Doc. 78 at 5–6.)

But even assuming that the extension of credit under a credit card agreement constitutes a loan of money under § 37-1, the court cannot conclude at this point that the Defendants were entitled to postjudgment interest under § 37-1. The automatic award of postjudgment interest

---

[1] As Shelton acknowledges, the Connecticut courts have not addressed this issue. *Ballou v. Law Offices Howard Lee Schiff*, 39 A.3d 1075, 1085 n.10 (Conn. 2012).

5

applies only when the right to postmaturity interest has not been disclaimed by the creditor. *Sikorsky*, 108 A.3d at 233. Here, some evidence suggests that Capital One waived its right to postmaturity interest and that Equity is bound by that waiver. The last credit card statement that Plaintiff received, in December 1997, listed her account balance as $504.12 and the applicable interest rate for that month at 19.44%. (Doc. 68-4 at 14.) Other documents, the admissibility of which Plaintiff disputes, show the sale of Plaintiff's account from Capital One to Collins in June 2000 and from Collins to Equity in November 2000. (Doc. 68-4 at 48–51.) The value of Plaintiff's account at the time of each sale was $544.12. But, if interest had continued to accrue and fees were imposed between 1997 and 2000, the balance due at the time of the sales to Collins and Equity would have been substantially more than $544.12.

What is more, Capital One was required by the Truth-In-Lending Act to issue a monthly billing statement for each month during which a finance charge was imposed. 15 U.S.C. § 1637(b) (1997). And a similar provision of Connecticut law requires that a creditor of an open-end credit plan provide an annual statement for any year in which "interest aggregating ten dollars or more has been imposed." Conn. Gen. Stat. § 42-133d. Defendants have not introduced any credit card billing statements issued by Capital One after December 1997 or any other evidence that Capital One imposed any interest charges after that date. Under Connecticut law, this may constitute a waiver of Capital One's right to interest (and fees), a waiver to which Equity, as its successor in interest, could be bound. *See RBC Nice Bearings, Inc. v. SKF USA, Inc.*, 123 A.3d 417, 424 (Conn. 2015) ("Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied." (internal quotation marks and citations omitted)); *Gianetti v. Health Net of Conn., Inc.*, 976 A.2d 23, 27 (Conn. App. Ct. 2009) ("[A]n assignee stands in the shoes of the assignor ... [and] has no greater rights or immunities than the assignor would have had if there had been no assignment." (quotation marks and citation omitted)). Other federal courts have also concluded that a creditor's failure to charge interest after charging off a delinquent credit card account can constitute a waiver of the right to such interest that binds the creditor's assignees. *Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103, 1109–10 (N.D. Ill. 2014); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 524–26 (E.D. Mich. 2013); *McDonald v. Richard J. Boudreau & Assocs., LLC*, 2013 WL 3479273, at *3–4 (D.R.I. July 10, 2013).

If postmaturity interest was waived, then under *Sikorsky*, postjudgment interest could only have been awarded by judicial discretion under § 37-3a. 108 A.3d at 234–35.

Neither Shelton nor Plaintiff has submitted evidence that sufficiently resolves the questions of whether Capital One waived its right to postmaturity interest and whether Equity was bound by that waiver. Accordingly, the court denies both Plaintiff's and Shelton's motions for summary judgment.

### III. Plaintiff's Motion to Amend Complaint (Doc. 108)

The court will permit Plaintiff to amend the complaint. The reason is simple. Something is very wrong with the collection of Plaintiff's credit card account. Plaintiff maxed out the credit card's $200 limit and in December 1997 after six months of interest and fees, she owed $504.12. Her account was sold at that balance first to Collins and then to Equity in 2000. While $504 is not inconsequential, it is an amount which a person can repay without significant effect on his or her life and finances. Five years later, Defendants obtained a default judgment against Plaintiff for $3,535. Over the course of the next decade, Plaintiff paid over $5,000. After she stopped paying in October 2012, Shelton sent Plaintiff a collection letter in April 2013 advising her that she still owed a balance of $366.97.

On these facts, the question arises: under what reasonable system of civil justice does a debtor repay more than 25 times the amount she borrowed over the course of sixteen years? It is up to the parties to address this question under state and federal law.

The motions to dismiss and for summary judgment have removed one issue—the application of CUTPA to Shelton—and clarified the terms of debate for another—whether § 37-1 or §37-3a govern the award of postjudgment interest on the small claims judgment. Plaintiff is entitled to an opportunity to amend the complaint to state any claims which remain viable against Defendants. The court will allow Plaintiff sixty (60) days from entry of this order to file a second amended complaint. Plaintiff has tendered an amended complaint, (Doc. 108 at 3–18.) but the court would prefer if Plaintiff took the time to draft a new one. It requests that Plaintiff file an amended complaint that *separately identifies* each alleged violation of federal or state law so that any further summary judgment practice can be directed at specific claims.

7

The court notes that Defendants have raised several arguments suggesting that Plaintiff's proposed amendments are futile. (Doc. 109 at 10–16.) As to one of them—that Plaintiff is precluded by the default judgment from arguing that Capital One waived its right to interest and fees after December 1997 and that Defendants therefore had included improper charges in their calculation of Plaintiff's debt in the small claims action—the court notes that the State of Connecticut recognizes the appropriate limits of the issue preclusive effects of default judgments. *See Jackson v. R.G. Whipple, Inc.*, 627 A.2d 374, 377–81 (Conn. 1993). Other arguments, including that Plaintiff is attempting to bring claims that are not within applicable statutes of limitations, should await the Plaintiff's amended complaint.

### IV.   Motion to Compel (Doc. 96)

Plaintiff has filed a motion to compel directed at Defendant New England Adjustment Services, Inc., a collection agency. The court grants the motion with respect to Production Request one through six. To the extent these documents have not already been produced to Plaintiff, production is ordered within ten (10) days from entry of this order.

Production Request seven has been answered.

The court denies the motion with respect to Production Requests eight and nine since postjudgment interest and payments on judgments obtained by Equity against other debtors are not relevant to this case.

### V.   Motions Concerning Sur-replies (Docs. 114, 116, 118)

The court denies Plaintiff's Motion to Strike Defendants' Sur-replies. Both sides have submitted copious amounts of briefing in this case. All of it was welcome. There is no need to strike the later memoranda from the record.

### Conclusion

Defendant Shelton's Motion to Dismiss (Doc. 26) is DENIED as MOOT. Defendant Equity's Motion to Dismiss (Doc. 35) is DENIED as MOOT. Plaintiff's Motion for Summary Judgment as to liability (Doc. 44) is DENIED. Defendant Shelton's Cross Motion for Summary Judgment (Doc. 68) is DENIED. Plaintiff's Motion to Compel (Doc. 96) is GRANTED IN

8

PART and DENIED IN PART.  Plaintiff's Motion to Amend (Doc. 108) is GRANTED. Plaintiff's Motion to Strike Surreplies (Doc. 114) is DENIED.  Defendants' Motions for Permission to File Sur-Reply Briefs (Docs. 116, 118) are GRANTED.

Dated this 19 day of September, 2016.

/s/ Geoffrey W. Crawford, USDJ
Geoffrey W. Crawford, Judge
United States District Court